UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| YAIR ISRAEL BABAYOFF, | Civil Action No. 23-3644 (RK) (RLS) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| UNITED STATES OF AMERICA, et al., | |
| Defendants. | |

Plaintiff Yair Israel Babayoff has filed a Complaint seeking relief under 42 U.S.C. § 1983. The Court previously granted his application to proceed *in forma pauperis* and provided him with an opportunity to file an all-inclusive amended complaint. (ECF No. 13.) Plaintiff did not elect to file an amended complaint, and the Court now screens his original complaint for dismissal under 28 U.S.C. § 1915(e)(2)(B).[1] Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted and/or to dismiss any defendant who is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). To survive screening, Plaintiff's Complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *See id.* Because Plaintiff is proceeding pro se, the Court construes his allegations liberally. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

---

[1] Plaintiff also filed a request to "stay his state court proceedings, which the Court denied on March 12, 2025. (ECF No. 17.)

At the time Plaintiff filed his complaint, he was incarcerated at Monmouth County Correctional Institution ("MCCI"). On or about September 29, 2023, Plaintiff wrote to notify the Court that he was released from MCCI, and resides in Flushing New York. (ECF No. 8.) The allegations in his complaint stem from his arrest on various charges in New Jersey and his resulting incarceration at MCCI. Although quite difficult to discern, his claims appear to involve at least three criminal complaints filed against him.

In mid-February 2021, Defendant Robert Russo allegedly contacted Plaintiff in New York for an insurance policy for Russo's business, Billy Bob's Auto Restoration ("Billy Bob's"). (Complaint at 6.) Plaintiff allegedly advised Russo that the quote would be higher than prior quotes, and Russo allegedly agreed to the new quote of $5000.00 and emailed a check to Plaintiff. (*Id.* at 6-7.) Plaintiff emailed the policy to Russo, and, thereafter, Russo complained that Plaintiff "stole money." (*Id.* at 7.)

Russo also allegedly told Plaintiff "I know your Jewish Orthodox Faith," "You are a *Ganav* (Thief in Hebrew Translation)" and "you are just like the rest of the Jewish People that are trying to take over this township." (*Id.*) Russo allegedly told Plaintiff that he or his car restoration company "does work for the Jackson Police Department" (Complaint at 5, 7) and that Plaintiff would be getting a summons. Plaintiff further alleges that Russo went to the Jackson police department to file a complaint for Theft of Services and Forgery. (*Id.* at 7.) According to Plaintiff, an affidavit of probable cause issued based on admissions Plaintiff never made. (*Id.*) Plaintiff alleges that Jackson Township police detective Rodriguez never spoke to Plaintiff and never served him with the summons. According to Plaintiff, the summon went to the wrong address. (*Id.*)

Later in the Complaint, Plaintiff alleges that Toms River and Jackson Township were sued by the Department of Justice for religious discrimination against the Orthodox Jewish community,

that the complaining witness, i.e., Russo, knew Plaintiff was Orthodox and had a "relationship" with the Jackson Police Department, and that the criminal complaint for Theft of Services and Forgery is "primarily due to [Plaintiff's] religious background." (*Id.* at 9.)

It is not entirely clear what § 1983 claim(s) Plaintiff is seeking to bring based on these facts, but the claim(s) fails for other reasons.[2] To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. *See West v. Atkins*, 487 U.S. 42, 48-49 (1988); *see also United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 941 F.2d 1292, 1295–96 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'") (citing *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).

Here, Russo appears to be a private individual and Billy Bob's appears to be a private entity; as such, they may only be deemed to be acting under color of state law if there is a showing

---

[2] Plaintiff may be attempting to assert claims for false arrest, malicious prosecution, and/or violations of his right to equal protection of the law. "To assess claims of false arrest, the court must determine whether 'the arresting officers had probable cause to believe the person arrested had committed the offense.'" *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017) (*Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). Malicious prosecution requires evidence that: (1) the defendant[ ] initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant[ ] acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Id.* (citing *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005). A claim under § 1983 alleging an equal protection violation requires a plaintiff to plead facts showing "'purposeful discrimination' or 'different treatment from that received by other individuals similarly situated.'" *See Road-Con, Inc. v. City of Philadelphia*, 120 F.4th 346, 359 (3d Cir. 2024) (quoting *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005)).

of conspiratorial or other concerted action between a state actor and a private party. *NCAA v. Tarkanian*, 488 U.S. 179 (1988); *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) (a private action "is not converted into one under color of state law merely by some tenuous connection to state action"). Plaintiff does not plead the elements of a § 1983 conspiracy and makes only vague allegations that Russo or Billy Bob's "does work" for Jackson Township (or has a "relationship" with the police department) and that Russo told Plaintiff he would be receiving a summons. These allegations, without more, do not lead to the inference that Russo and/or Billy Bob's are state actors.

Plaintiff also fails to provide sufficient facts to suggest that Rodriguez, who is a state actor, conspired with Russo to file false charges against Plaintiff, maliciously prosecuted him, or intentionally discriminated against Plaintiff on the basis of his religion. Plaintiff alleges only that Rodriguez failed to talk to Plaintiff or send him the summons. Moreover, an officer can rely on information supplied by a complaining witness, as long as the officer does not know about "substantial evidence of the witness's own unreliability." *Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000). There are no facts to suggest that Rodriguez knew that Russo was an unreliable witness or had filed the complaint due to religious bias toward Plaintiff. The Court dismisses the § 1983 claims without prejudice at to Russo, Billy Bob's, and Rodriguez for failure to state a claim for relief under § 1915(e)(2)(B).

Plaintiff also sues Jackson Township in connection with the alleged false charges and/or equal protection violations and alleges in a conclusory manner that "Defendants . . . have created criminal charges based on race and religion of being Jewish Orthodox" and will deny him a fair and impartial trial. (Complaint at 4-5.) The liability of a municipality under 42 U.S.C. § 1983 is governed by *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Municipalities may

not be found vicariously liable for the conduct of their employees under the doctrine of respondeat superior. *Ed. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). For liability to attach under Section 1983, the municipality itself must cause the constitutional violation at issue. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989). A successful *Monell* claim must allege the following: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) and facts showing that the constitutional violation was caused by the municipality's policy or custom. *Wilson v. City of Phila.*, 177 F. Supp. 3d 885, 908 (E.D. Pa. 2016) (citing *Monell*, 436 U.S. at 658). The municipality is liable when either the policy or custom facially violates the Constitution, or if not unconstitutional itself, is the "moving force" behind the constitutional violation. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014). Alternatively, a plaintiff may allege a *Monell* claim by pleading facts showing that his injuries were caused by a failure or inadequacy by the municipality that "reflects a deliberate or conscious choice." *See Estate of Roman v. City of Newark*, 914 F.3d 789, 798–99 (3d Cir. 2019) (internal quotation marks omitted) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)); *see also Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (explaining that the second type of *Monell* claim involves failures to train, supervise, or discipline).

Here, Plaintiff alleges that Russo, a private individual who allegedly had religious animus toward Plaintiff or Orthodox Jewish individuals in general, initiated a false criminal complaint against him for theft of services and forgery in Jackson Township. According to Plaintiff, the Justice Department investigated Jackson Township for religious discrimination against the Orthodox Jewish community. Plaintiff, however, has not pleaded sufficient facts showing an underlying constitutional violation. Nor has he provided any facts showing that Jackson Township's specific policies or customs were the moving force of any constitutional violations or

that his injuries resulted from Jackson Township's deliberate failure to train, supervise, or discipline its employees. The Court dismisses without prejudice the *Monell* claim as to Jackson Township.

Plaintiff next alleges that he received a call from the state court notifying him that the criminal complaint filed by Russo and Billy Bob's was transferred from Jackson Township to Toms River. (Complaint at 7.) Plaintiff alleges that he was assigned three different public defenders, each of whom was incompetent. His first public defender did not return his emails or calls and would not move to dismiss the indictment. (*Id.* at 8.) The second public defender failed to retrieve his file or review the file. Plaintiff also informed second counsel that Toms River and Jackson Township were being sued by the Department of Justice for religious discrimination against the Orthodox Jewish community and advised her that the complaining witness knew he was Orthodox and had a "relationship" with the Jackson Police Department and that he criminal complaint is "primarily due to [Plaintiff's] religious background." (*Id.* at 9.) His second public defender made a motion for a change of venue, but it was poorly written and did not connect the criminal charges in his case to the case brought by the Department of Justice, along with other deficiencies. (*Id.*) Plaintiff's third counsel failed to contact him until Plaintiff contacted the state court, at which point third counsel emailed Plaintiff an eight-page decision. (*Id.*) Third counsel allegedly refused various requests related to Plaintiff's case and his ongoing medical issues and also failed to review the evidence and was unaware of the law governing Plaintiff's case. (*Id.* at 9-10.) Plaintiff repeatedly emailed the state court because he believed his public defenders were incompetent, but his emails "went unheard." (*Id.* at 10.)

Plaintiff has sued Toms River Township and Ocean County for failing to provide him with competent counsel in his criminal case. (Complaint at 7.) Once again, Plaintiff has not pleaded

facts to support a *Monell* claim against Toms River Township or Ocean County in connection with the assignment of counsel in his criminal cases. Nor can Plaintiff bring a § 1983 claim against the Office of the Public Defender, which is a state agency, for failing to provide him with competent counsel. *See Smart v. Administrative Office of the Courts*, No. 14-4303, 2016 WL 632230, at *7 (D.N.J. Feb. 2016) ("[T]he the Office of the Public Defender is not a 'person' subject to suit under § 1983."). Further, Plaintiff may not proceed against an individual public defenders who represented him, as "ineffective assistance of appointed counsel in representing a defendant is not actionable under § 1983." *Introcaso v. Meehan*, 338 F. App'x 139, 142 (3d Cir. 2009) (citing *Polk County v. Dodson*, 454 U.S. 312, 324–25 (1981) (no state action for the purposes of § 1983 where public defender represented defendant in criminal matter)). The Court dismisses the *Monell* claim without prejudice and dismisses the claims against the Office of the Public Defender and Plaintiff's individual public defenders with prejudice.

Plaintiff next alleges that he also filed a civil right action in the United States District Court for the Eastern District of New York regarding the failure to assign him competent counsel, and the case was transferred to the District of New Jersey and assigned to Judge Freda L. Wolfson, now retired. (Complaint at 10.) Judge Wolfson also had another case filed by Plaintiff. (*Id.*) According to Plaintiff, both cases were improperly dismissed. (*See id.* at 10-11.)

Plaintiff appears to sue the United States of America in connection "failing to intervene" in the improper dismissals of these actions and for failing to provide him competent legal counsel. (*Id.* at 10-11.) Plaintiff brings these claims pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). (ECF No. at 3.) The United States is not a proper defendant in a constitutional tort action bought under *Bivens*, as the claims against it are barred by sovereign

7

immunity. *See FDIC v. Meyer*, 510 U.S. 471, 478 (1994); *Ky v. Graham*, 473 U.S. 159, 165–66. Therefore, the Court dismisses the *Bivens* claims with prejudice as to the United States.[3]

Plaintiff next alleges that while his criminal case was pending in Toms River, Judge Dina Vicari allegedly filed a "personal harassment and stalking complaint and used her own court in Toms River to issue the complaint warrant." (Complaint at 11.) Plaintiff alleges that the Judicial Officer Laura Wicki, who works in the same court as Vicari, signed the warrant to arrest Plaintiff. Joseph Vicari, the Ocean County Commissioner, who is allegedly the father of Judge Dina Vicari, also "claimed harassment and stalking" and used Judge Dina Vicari's court to execute a warrant and summons for "their personal use" as opposed to helping Plaintiff find competent counsel. (*Id.* at 11.) Plaintiff does not provide any additional facts about what precipitated the harassment and stalking charges or whether there was probable cause for the charges, but he complains that he will not receive a fair trial on these charges. (*Id.* at 3-4.) Plaintiff also sues the Ocean County Commissioner's Office for allowing Joseph Vicari to use his power and influence for his personal use to issue a warrant complaint against Plaintiff. (*Id.*) Plaintiff also sues the Ocean County Sheriff's Office for allegedly assisting Joseph and Dina Vicari in executing the warrant and criminal complaint. (*Id.* at 12.)

The Court dismisses without prejudice the claims against Dina Vicari and Joseph Vicari in connection with the filing of false charges because he has not pleaded sufficient facts to make out a false arrest, false imprisonment, malicious prosecution, or any other constitutional claim against

---

[3] The Court does not construe Plaintiff to bring any claims against Judge Wolfson, who would be immune from damages for her judicial decisions. "It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.'" *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000) (quoting *Mireles v. Waco*, 502 U.S. 9, 11 (1991)). "A judge will not be deprived of immunity because the action [she] took was in error, was done maliciously, or was in excess of [her] authority." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). If Plaintiff believed his complaints were improperly dismissed, his recourse would have been to file an appeal in the Third Circuit.

these individuals. Indeed, Plaintiff provides no facts to suggest that the stalking and harassment charges were not supported by probable cause or that these charges have been dismissed. The fact that these charges were filed in the Court or County where Judge Dina Vicari and Joseph Vicari work (and the violations presumably occurred) does not, without more, rise to the level of a federal constitutional violation.

The Court also dismisses the claims against the Ocean County Sheriff's Office because it is not a person under § 1983. Although "[a] local governmental agency may be a 'person' for purposes of § 1983 liability." *Lenhart v. Pennsylvania*, 528 F. App'x. 111, 114 (3d Cir. 2013) (citing *Monell*, 436 U.S. at 694), a sheriff's department is not a separate legal entity from the municipality. *See Gonzalez v. Cape May Cnty.*, No. 12–0517, 2015 WL 1471814, at *4 (D.N.J. Mar. 31, 2015) (finding that plaintiff could not sustain separate § 1983 claim against a sheriff's department because it was a subunit of the local municipality). The Court also dismisses without prejudice the § 1983 claim against the Ocean County Commissioner's Office because this claim is based on respondeat superior, which is not a valid basis for a *Monell* claim. Plaintiff has not otherwise pleaded a *Monell* claim against Ocean County in connection with the stalking and harassment warrant or charges, and this claim is likewise dismissed without prejudice as to Ocean County.

Plaintiff additionally sues Ocean County and Monmouth County for failing to provide him with proper discovery and other pertinent documents in the criminal case involving Russo and Billy Bob's. (Complaint at 12.) Monmouth County also denied Plaintiff's release on bail on an ankle monitor because the judge allegedly knows "the complaining witnesses and is biased and not impartial." (*Id.*) According to Plaintiff, both Ocean and Monmouth Counties have "fail[ed] to intervene" in discrimination against Jewish Orthodox people. (*Id.*) Because Plaintiff has not

9

pleaded facts supporting a *Monell* claim against Ocean or Monmouth Counties in connection with these incidents and allegations, the Court dismisses the *Monell* claims without prejudice for failure to state a claim for relief.

Plaintiff has also sued MCCI, the Monmouth County Sheriff's Office, and Centra Medical Center for incidents that occurred while he was incarcerated at MCCI. Plaintiff alleges that since May 21, 2023, he was denied a daily prayer book (Siddur), prayer ritual objects (Talit and Tefilin), and a Jewish prayer shawl undergarment, (Tzitit Katan). (Complaint at 12.) Plaintiff was also allegedly denied Kosher meals for the first three days of his incarceration. (*Id.* at 12.) Plaintiff also alleges that he was deprived of "proper medication" and was sleep deprived due to the constant light. (*Id.*) Plaintiff further alleges he was "dragged across a hallway naked with no clothing by a corrections officer" but he does not provide any other facts about this incident. (*Id.*) Plaintiff also made numerous requests for the forms to file a civil rights complaint, but did not receive them. (*Id.* at 12-13.)

According to Plaintiff, the denial of Xanax, Buspare, and Zoloft caused him to attempt suicide and harm himself. (*Id.* at 13.) He was rushed to Centra hospital and overheard a conversation between "a Capitan [sic] of the Sheriff's Correction officer and the head nurse not to provide Plaintiff with medical care[,] medicine[, an] x-ray of neck[,] medication and so forth[.]" Plaintiff alleges that "because Centra is a state hospital . . . all medical advice was being controlled by MCCI and Sheriff's Correction Officers and not the medical doctors." (*Id.*) Plaintiff alleges that he never spoke to the doctors or received care. (*Id.*) Plaintiff further alleges that he has current neck pain from the attempted hanging, and no one x-rayed him. (*Id.*)

Plaintiff brings these claims against the Monmouth County Sheriff's Office and MCCI, but neither entity is a "person" for purposes of § 1983. *See Gonzalez*, 2015 WL 1471814, at *4

(finding that plaintiff could not sustain separate § 1983 claim against a sheriff's department because it was a subunit of the local municipality); *Lenhart*, 528 F. App'x at 114 (3d Cir. 2013) (affirming dismissal of claims against county prison because it "is not a person capable of being sued within the meaning of § 1983") (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). The Court dismisses with prejudice Plaintiff's claims against the Monmouth County Sheriff's Office and MCCI arising from his conditions of confinement at MCCI.

Based on his allegations, the Court construes Plaintiff to raise a First Amendment free exercise claim, a Fourteenth Amendment excessive force claim, and a Fourteenth Amendment claim for deliberate indifference to his health and safety. Plaintiff purports to bring these claims against Monmouth County, but he fails to plead the elements of a *Monell* claim, and the Court dismisses without prejudice these claims as to Monmouth County and/or Centra. Plaintiff may try to cure the deficiencies in these claims against Monmouth County through amendment and/or may amend to sue the individual prison officials who allegedly violated his constitutional rights. He must, however, provide sufficient facts to show how each individual defendant was involved in the events giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). Here, Plaintiff does not identify any of the individuals (by name or as John Does) involved in the alleged violations of his First Amendment right to free exercise. He also fails to identify the prison officials or medical staff who denied him his medications and fails to provide the relevant circumstances connecting the denial of the medications to his attempted hanging. Finally, Plaintiff vaguely asserts that an employee of the Sheriff's Department told the "head nurse" at Centra Hospital not to provide Plaintiff with medication or medical care, but these allegations are too vague to state a claim for relief and lack a sufficient description of the persons involved, the

approximate date on which the incident occurred, and the specific medical care Plaintiff required and failed to receive.

Finally, Plaintiff alleges that Detective Coons of the Ocean County Police Department claimed that he spoke to Plaintiff in April 2021, and filed a false affidavit of probable cause based on an "unverifiable admission," resulting in a criminal complaint. (Complaint at 13.) The criminal complaint alleged that Plaintiff fraudulently created a bank approval letter to buy a home. (*Id.* at 13.) Plaintiff's appointed counsel became a judge while the case was pending, which created a conflict of interest. (*Id.*) After several delays, the case was allegedly dismissed on June 20, 2023. (*Id.*) Plaintiff appears to sue Ocean Township and/or Detective Coons in connection with this incident. (*Id.*) Once again, Plaintiff has not pleaded the elements to support a *Monell* claim against Ocean Township in connection with the alleged filing of false charges, and the Court dismisses without prejudice the claim against Ocean Township for failure to state a claim for relief. Plaintiff also fails to plead a false arrest or malicious prosecution claim against Detective Coons, as Plaintiff's allegations against him are conclusory and do not set forth facts supporting the elements of a false arrest or malicious prosecution claim. The Court dismisses without prejudice § 1983 claim against Detective Coon arising from this incident for failure to state a claim for relief.

The Court denies Plaintiff's request for appointed counsel in light of the dismissal of the complaint. (*See* Complaint at 14.) The Court also dismisses Plaintiff's claims for release from MCCI and to be provided religious items (*Id.* at 13-14) as moot because he is no longer incarcerated there.[4]

---

[4] Along with damages, Plaintiff seeks his release from MCCI with an ankle bracelet due to his health conditions. (Complaint at 13.) Plaintiff also asks for the religious prayer and garments be provided to him at the jail. (*Id.* at 14.) He also asks the Court to appoint a "federal defender" in this case. (*Id.*)

Finally, the Court also addresses Plaintiff's letter dated March 13, 2025 (ECF No. 18), which appears to seek reconsideration of the Court's Letter Order dated March 12, 2025, denying Plaintiff's request to stay his state court proceedings and for other relief. (ECF No. 17.) To prevail on a motion for reconsideration, the moving party must show at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its initial decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Moreover, when the assertion is that the Court overlooked something, the Court must have overlooked some dispositive factual or legal matter that was presented to it. *See* L. Civ. R. 7.1(i). Plaintiff letter does not meet the high standard for reconsideration and the Court discerns no basis for reconsidering its Letter Order. As such, the request for reconsideration is denied.

In sum, for the reasons explained in this Memorandum Opinion, the Court dismisses the *Bivens* claims against the United States on the basis of sovereign immunity and dismisses the remaining § 1983 claims for failure to state a claim for relief pursuant to the Court's screening authority under § 1915(e)(2)(B). Within 30 days of the date of this Order, Plaintiff may file an amended complaint to the extent he can cure the deficiencies in those § 1983 claims the Court has dismissed without prejudice.[5] If Plaintiff does not submit an Amended Complaint within 30 days, the dismissal of this action shall automatically convert to a dismissal with prejudice. The Court

---

[5] Plaintiff should note that when an amended complaint is filed, it generally supersedes the original and renders it of no legal effect. *See West Run Student Housing Associates, LLC v. Huntington National Bank*, 712 F.3d 165, 171 (3d Cir. 2013)(collecting cases). Therefore, if he chooses to amend, Plaintiff should file an all-inclusive amended complaint and should not submit piecemeal submissions to the Court.

also denies Plaintiff's request for reconsideration of the Court's Letter Order dated March 12, 2025. (ECF No. 18.) An appropriate Order follows.

ROBERT KIRSCH
United States District Judge